IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CARLA MANNA, et al. | * |
| | * |
| v. | * Civil No. CCB-13-721 |
| | * |
| JOHNNY'S PIZZA, INC., et al. | * |

******

**MEMORANDUM**

Plaintiffs Carla Manna, Bryan McMillan, and Richard J. Lawrence brought this suit against Johnny's Pizza, Inc. and John Hofman (collectively, "the defendants") for violations of tip credit provisions of the Fair Labor Standards Act of 1938 ("FLSA") and the Maryland Wage and Hour Law. The plaintiffs filed their complaint on March 7, 2013. On April 11, 2013, the defendants made offers of judgment to each of the three plaintiffs; counsel on both sides agree that the offers constituted full relief. The plaintiffs accepted the offers of judgment on April 26, 2013, and on April 29, 2013, the court approved the parties' settlement. The settlement totaled $24,262.70, of which Manna received $8,633.78, McMillan received $9,153.72, and Lawrence received $6,475.20.

Now pending before the court is the plaintiffs' motion for attorneys' fees and costs pursuant to the FLSA.[1] The plaintiffs seek an award of $20,343.15 in attorneys' fees and

---

[1] The plaintiffs filed their motion on May 3, 2013. (*See* ECF No. 14.) They filed their supporting memorandum on June 6, 2013, within thirty-five days from the date the motion was filed, as required by Local R. 109.2(a). (*See* ECF No. 22.)

1

$1,419.10 in costs.[2] The parties have fully briefed the issues, and no oral argument is necessary. *See* Local R. 105.6. For the reasons stated below, attorneys' fees in the amount of $10,964.00 and costs in the amount of $341.74 will be awarded.

## ANALYSIS

Successful plaintiffs in FLSA actions are entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b). Although the payment of attorney's fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). In deciding the amount of attorney's fees to award, the court must calculate the lodestar, or "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.*

Historically, courts have assessed the reasonableness of fee petitions by considering the following "*Johnson* factors":

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

---

[2] The plaintiffs submitted a bill of costs, and received $350.00 for the cost of the filing fee. (*See* Clerk's Order Taxing Costs, ECF No. 25.) The plaintiffs' bill of costs does not overlap with the costs requested in their motion for attorneys' fees.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citation omitted). The Supreme Court in 2010 expressed some doubt as to the reliability of this approach, *see Perdue*, 559 U.S. at 550–51, but the Fourth Circuit has indicated that the *Johnson* factors may properly be used to "inform" and sometimes "adjust" the calculation of the lodestar number. *See McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013). Thus, the court considers the *Johnson* factors "in conjunction with the lodestar methodology" and, "to the extent that any of these factors already has been incorporated into the lodestar analysis, [it does] not consider that factor a second time." *E. Associated Coal Corp. v. Dir., Office of Workers' Compensation Programs*, 724 F.3d 561, 570 & n.5 (4th Cir. 2013).

As a preliminary matter, the court does not agree with the defendants that plaintiffs' counsel are barred from seeking any fees or costs. According to the defendants, the plaintiffs' fee petition must be rejected in its entirety because the motion filed on May 3, 2013, did not "state the amount sought or provide a fair estimate of it." *See* Fed. R. Civ. P. 54(d)(2)(B). Although the defendants are correct that the plaintiffs' motion did not state the fees and costs sought, their June 6, 2013, supporting memorandum certainly did. Plaintiffs' counsel also shared with the defendants an initial estimate of fees and costs in an April 30, 2013, email, and they attached their raw billing statements to a May 1, 2013, email. (*See* Apr. 30, 2013, Email from Woodfield, ECF No. 23-2; *see also* May 1, 2013, Email from Woodfield, ECF No. 23-3, at 2.)[3] They initially requested $23,556.25 in fees and $823.99 in costs, and estimated that they would incur an additional $1,500 to $2,500 for preparing the fee petition and bill of costs. (Apr. 30, 2013, Email from Woodfield.) The defendants argue that those amounts constituted a "bad faith

---

[3] Defense counsel complains that the billing statements were in a "locked" PDF format and, as a result, could not be printed. It is not clear why plaintiffs' counsel objected to sending the billing statements in a printable or hard-copy format, but their email was sufficient to provide an estimate of the fees and costs sought.

3

and excessive demand," (Defs.' Opp., ECF No. 23, at 8), but plaintiffs' counsel offered to speak with them about the proposed fees and costs in an attempt to resolve this matter without the court's assistance. (*See* Apr. 30, 2013, Email from Woodfield.) Moreover, although plaintiffs' counsel ended up requesting fewer fees in their supporting memorandum, the court cannot conclude that their exercise of billing discretion reflects bad faith. Finally, the defendants were not prejudiced by the fact that the estimate was included in an email rather than the May 3, 2013, motion; they received the estimate well within fourteen days after entry of judgment on April 29, 2013. Plaintiffs' counsel, therefore, substantially complied with the requirements of Rule 54(d)(2)(B) by providing a "fair estimate" of their fees and costs.

The court will move on to consider the plaintiffs' fee petition on the merits. The defendants challenge the reasonableness of plaintiffs' counsel's proposed hourly rates, as well as the number of hours claimed. They also challenge plaintiffs' counsel's requested costs.

### A. Hourly Rates

The court considers plaintiffs' counsel's proposed hourly rates of (1) $400.00 for attorney R. Scott Oswald, (2) $400.00 for attorney Nicholas Woodfield, and (3) $190.00 for associate attorney Dallas Hammer. They also request reimbursement for law clerk and legal assistant time at $115.00 per hour.[4] The defendants urge the court to apply hourly rates of $350.00 for Woodfield, $325.00 for Oswald, $150.00 for Hammer, and $100.00 for law clerks; they ask the court not to award any fees for legal assistants.

In one of Oswald and Woodfield's previous FLSA cases, the court awarded both of them a $400.00 hourly rate, and compensated associate attorney time at a rate of $190.00 per hour and

---

[4] Woodfield provides the credentials of each attorney billing time on this case, except Hammer. (*See* Decl. of Woodfield, ECF No. 22-6, at 1–5.) Thus, the court does not know how long Hammer has been practicing law or his level of experience in FLSA matters.

legal assistant time at a rate of $115.00 per hour. *See Young v. Viable Commc'ns, Inc.*, No. PJM-09-2250, 2011 WL 5825429, at *1 (D. Md. Nov. 14, 2011).[5] Hourly rates, however, were not contested in that case. *Id.*; *see also Landaeta v. Da Vinci's Florist, LLC*, No. WGC-10-3247, 2011 WL 5118420, at *1 (D. Md. Oct. 24, 2011) (applying uncontested hourly rates of $400.00 for Oswald and Woodfield and $115.00 for legal assistants and law clerks). In *Kabore v. Anchor Staffing, Inc.*, a more recent FLSA case where rates were contested, the court awarded Oswald an hourly rate of $300.00 and Woodfield an hourly rate of $400.00. No. L-10-3204, 2012 WL 5077636, at *9–10 (D. Md. Oct. 17, 2012). The court in *Kabore* also compensated associate attorney time at a rate of $190.00 per hour and legal assistant time at a rate of $115.00 per hour. *Id.*

Here, the court accepts the proposed hourly rates for Woodfield and law clerks and legal assistants. Those hourly rates represent the upper end of accepted rates, and are consistent with rates previously awarded by the court. *See* Local R., App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. The court does, however, find a reduction in Oswald's fee to $350.00 is warranted. This revised fee reflects Oswald's substantial experience, while still acknowledging that he has fewer years of experience than Woodfield. The court also will reduce Hammer's fee to $150.00 per hour. The court agrees with the defendants that, because plaintiffs' counsel fail to provide any information as to his credentials, they do not satisfy their burden of showing he is entitled to the upper end of accepted rates. *See CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 787–88 (D. Md. 2000). In sum, the court shall apply the following hourly rates in calculating the lodestar: $400.00 for Woodfield, $350.00 for Oswald, $150.00 for Hammer, and $115.00 for law clerks and legal assistants.

---

[5] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

### B. Hours Claimed

In addition to challenging plaintiffs' counsel's hourly rates, the defendants argue that certain hours were not reasonably expended and, accordingly, must be deducted from the lodestar calculation. The defendants first object to hours claimed during the "pre-engagement" stage of the case, before plaintiffs' counsel were retained.[6] According to the defendants, plaintiffs' counsel request fees for time spent deciding whether to take the case. The Supreme Court explained in *Hensley v. Eckerhart* that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* . . . ." 461 U.S. 424, 434 (1983); *see also Jackson v. Estelle Place, LLC*, No. LMB-08-984, 2009 WL 1321506, at *4 (E.D. Va. May 8, 2009) (denying Woodfield and Oswald "fees related to . . . [their] examination of the plaintiffs' claims before [they were] retained . . . because a private client would not be charged for those expenses"), *aff'd*, 391 Fed. App'x 239 (4th Cir. 2010). The court finds that most hours claimed during the pre-engagement stage were indeed spent evaluating the plaintiffs' case. For example, plaintiffs' counsel seek compensation for meetings during which they discussed case evaluation. (*See* Pls.' Time Sheet, ECF No. 22-7, at 1–3.) Likewise, they claim hours for preparing a "case evaluation presentation." (*See id.*) Those hours would not be charged to a private client, and should not be charged to the defendants here. The court will, however, allow plaintiffs' counsel to recoup fees for the reasonable time spent interviewing Manna, McMillan, and Lawrence, as well as the time spent preparing for those interviews; the defendants concede plaintiffs' counsel may recover for time spent interviewing clients and preparing the lawsuit. (Defs.' Opp. at 16.)

---

[6] The defendants break down the case into seven stages: (1) "Pre-Engagement Investigation Begins," (2) "Pre-Engagement Ends And Formally Retained," (3) "Complaint Drafting and Filing," (4) "Appearance/Answer of Defendants," (5) "Offers of Judgment (time subsequent to)," (6) "Notice of Acceptance Filed (time subsequent to)," and (7) "Drafting of Fee Petition (Memorandum)." (Defs.' Opp. at 15.) They make objections at each stage.

Accordingly, the court will subtract 9.6 hours from Hammer's time, 1.7 hours from Woodfield's, and 2.7 hours from Oswald's. (*See* Pls.' Time Sheet at 1–3.)

Next, the defendants challenge the number of hours spent on the period immediately following pre-engagement, when plaintiffs' counsel agreed to take the case. They object to the 5.8 hours Hammer and Oswald devoted to drafting an opinion letter, but the court does not find that amount of time unreasonable. *Cf. Landaeta*, 2011 WL 5118420, at *9 (reducing fees when a "paralegal/law student" billed 5.8 hours researching an opinion letter and 6.3 hours drafting the document, and then Oswald claimed another 2.5 hours reviewing it). The court will, however, subtract 0.2 hours from the time claimed for project assistant Dillan Benson; he used that time to accomplish the clerical task of processing and distributing a letter. (*See* Pls.' Time Sheet at 3.) *See Kabore*, 2012 WL 5077636, at *4. Additionally, the court will reduce Hammer's time by the 0.7 hours spent performing administrative tasks related to transferring the case to other members of the firm. (*See* Pls.' Time Sheet at 3.) That time should have been deducted as a matter of billing discretion. The court finds another reduction is warranted for a "triple-billed" meeting held on February 13, 2013, to discuss "case transition." (*See id.* at 3–4.) Hammer, Woodfield, and Oswald attempt to charge the defendants for each attorney's time at the meeting. Accordingly, Hammer's fee will be reduced by 0.3 hours, Woodfield's by 0.3 hours, and Oswald's by 0.3 hours.

The defendants challenge the 21.3 billable hours claimed during the next stage of the case, when plaintiffs' counsel drafted the complaint. The defendants argue that the hours dedicated to researching, drafting, and meeting to discuss the complaint are unreasonable in light of plaintiffs' counsel's experience in FLSA matters. Although the approximately 12.1 hours dedicated to researching and drafting the complaint are reasonable, the court finds some

7

reduction to the time dedicated to meetings is warranted. In particular, the court will subtract 0.3 hours from law clerk Casey Miller's time; during that time, she met with Woodfield to discuss a "spreadsheet" and "filing items." (*See id.* at 5.) The court also will deduct the 0.3 hours Woodfield claimed for meeting with Miller "to discuss spreadsheet and named plaintiffs/opt-ins." (*See id.*) Those hours should have been excised as a matter of billing discretion. Additionally, the court agrees with the defendants that plaintiffs' counsel should not claim billable hours for reviewing reports from witnesses, when they offer no explanation as to who the witnesses are or their importance to the case. The court will deduct 0.8 hours from Woodfield's time and 0.7 hours from Miller's time. (*See id.* at 4–6.) The court will deduct another 0.5 hours from Woodfield's fee; he used that time to draft a retainer for opt-in clients, but as no opt-in clients entered the case, the hours should have been deducted using billing discretion. (*See id.* at 4.) Finally, the court will not reduce Woodfield's fee by the 0.6 hours devoted to preparing discovery on March 21, 2013. (*See id.* at 6.) Although the defendants had not answered the lawsuit when Woodfield began working on discovery, some limited preparation in advance of the answer and in anticipation of a scheduling order was reasonable.

The defendants object to the 2.6 hours claimed between April 2, 2013, and April 9, 2013, when defense counsel entered his appearance and answered the lawsuit. They argue that plaintiffs' counsel seek compensation for clerical tasks, question how long it took Woodfield to review a one-page letter from opposing counsel, ask the court to reduce the time spent preparing the lodestar statement, and claim that an April 4, 2013, phone call took just six minutes rather than eighteen minutes. The court agrees with the defendants that simply filing documents is a clerical task not recoverable in attorney's fees. *See Kabore*, 2012 WL 5077636, at *4. But the court recognizes that not all of the time claimed was dedicated to filing documents; indeed, the

entries indicate that Miller completed other tasks in addition to filing, such as preparing and reviewing the documents. (*See* Pls.' Time Sheet at 6.) Furthermore, contrary to the defendants' claim that Woodfield spent eighteen minutes reviewing a one-page letter, the relevant time entry states that he reviewed and responded to the letter and reviewed email correspondence from opposing counsel. (*See id.*) The court is satisfied with the 0.3 billable hours claimed for those tasks. Additionally, the court is satisfied that the 1.0 hour claimed for preparing the lodestar statement is reasonable. Finally, as to the defendants' claim that plaintiffs' counsel should have billed only 0.1 hours for a phone call with defense lawyer Howard B. Hoffman, the court will correct this discrepancy and reduce Woodfield's fee by 0.2 hours.

Next, the defendants object to the fees incurred between April 11, 2013, when the offers of judgment were made, and April 26, 2013, when the offers were accepted. Miller's time will be reduced by the 0.1 hours dedicated to the clerical task of downloading and circulating a scheduling order. (*See id.*) The court also will deduct hours associated with preparing discovery; those hours were incurred after the defendants made offers of judgment and, thus, were unnecessary. Accordingly, the court will reduce Miller's time by 0.2 hours, Woodfield's by 0.4 hours, law clerk Kenneth Bledsoe's by 0.5 hours, and Oswald's by 0.2 hours. (*See id.* at 6–7.) The court finds an additional reduction to Woodfield's time is warranted. He claims 1.0 hour for an email to opposing counsel accepting the offers of judgment. (*See id.* at 7.) As the defendants point out, however, Woodfield's two emails on April 23, 2013, total eight sentences, and could not have taken one hour to draft. (*See* Apr. 23, 2013, Emails from Woodfield, ECF No. 23-7.) Having awarded Woodfield a $400.00 hourly rate, the court expects him to work efficiently and, consequently, will reduce his fee by 0.8 hours. The defendants next argue that their time sheets reflect shorter phone calls with opposing counsel than those reported in

9

plaintiffs' counsel's time sheets. To correct those discrepancies, the court will subtract 0.2 hours from Woodfield's fee. (*See* Pls.' Time Sheet at 6–7.)

The defendants challenge any hours claimed by plaintiffs' counsel after April 26, 2013. In particular, they argue that between April 26, 2013, and May 21, 2013, when plaintiffs' counsel began drafting the memorandum in support of their fee petition, they claimed fees for clerical tasks. The court must agree; Bledsoe claims 0.6 billable hours for downloading and circulating documents. (*See id.* at 7–8.) Therefore, the court will subtract 0.6 hours from his time. (*See id.*) An additional 0.4 hours, which were spent reviewing federal and local rules for filing a fee petition, will be subtracted from Bledsoe's time. (*See id.* at 7.) Because plaintiffs' counsel are experienced in filing attorneys' fees motions, it was not reasonable to bill for law clerk research. Likewise, given plaintiffs' counsel's substantial experience, the court finds a reduction to the 0.7 hours dedicated to emailing defense counsel is warranted. (*See id.*) Recognizing the brevity of the email messages, the court will reduce Woodfield's fee by an additional 0.4 hours. The court will not, however, reduce billable hours for drafting billing statements and the bill of costs, because the 3.0 hours claimed are reasonable. (*See id.* at 7–8.)

The defendants also oppose the 12.9 hours dedicated to preparing the memorandum in support of the fee petition. They argue that plaintiffs' counsel should recover nothing for the preparation of their memorandum, because they failed to negotiate attorneys' fees in good faith. The court cannot agree. Although the court does not understand why plaintiffs' counsel refused to send their billing statements in a printable or hard-copy format, Hoffman took an aggressive stance during negotiation, which created conflict with opposing counsel and prevented them from identifying areas of agreement. He called plaintiffs' counsel's fee requests "outrageous and excessive," and relayed a "firm offer" of $5,000.00. (May 21, 2013, Email from Hoffman, ECF

No. 22-2, at 4–5; May 24, 2013, Email from Hoffman, ECF No. 22-2, at 1.) Plaintiffs' counsel, by contrast, attempted to narrow the issues in dispute in the fee petition and were willing to use $5,000.00 as a starting point for settlement discussions. (*See* May 21, 2013, Email from Woodfield, ECF No. 22-2, at 5–6; *see also* May 21, 2013, Email from Woodfield, ECF No. 22-2, at 3.) Nevertheless, the court finds a reduction in hours is warranted given plaintiffs' counsel's estimate that the fee petition would incur between $1,500 and $2,500 in fees and the relatively straightforward nature of the petition. The court will hold plaintiffs' counsel to their $2,500 estimate and, accordingly, will subtract 5.2 hours from Woodfield's time and 0.1 hours from Bledsoe's time. (*See* Pls.' Time Sheet at 8.)

The defendants ask the court to make additional reductions to plaintiffs' counsel's fees based on the *Johnson* factors. The court has considered all the *Johnson* factors in determining reasonable attorneys' fees. Some reduction to hours is warranted based on "the time and labor required in the case." *In re Abrams*, 605 F.3d at 244. While the court does not find plaintiffs' counsel failed to negotiate fees in good faith, it cannot overlook that they filed the lawsuit without first contacting the defendants to see if a settlement could be reached on their own. (*See* Defs.' Opp. at 2 ("There was no advance demand letter of any sort, much less any complaints.").) In light of the fact that the defendants made full and prompt offers of judgment, plaintiffs' counsel likely could have avoided at least some fees by just sending a demand letter. Simply put, this case did not require as much time as counsel claim. *Cf. Lowery v. Cash's Cabanas, Inc.*, No. MD-08-186, 2011 WL 679457, at *8 (N.D. Fla. Jan. 4, 2011) (finding a reduction in Woodfield and Oswald's fees appropriate when the case could have been settled "much earlier" had counsel "made reasonable efforts to work toward a settlement"). The court will impose a 10% reduction to the total hours claimed by each lawyer and law clerk: Hammer's

time will be reduced by 1.9 hours, Oswald's by 0.5 hours, Woodfield's by 3.4 hours, and law clerks' by 1.7 hours.

The defendants also ask for reductions to hours based on "the customary fee for similar work" and "the fee awards made in similar cases." *In re Abrams*, 605 F.3d at 244. The court has already analyzed rates awarded to Oswald and Woodfield in other FLSA cases. As explained above, to the extent that the *Johnson* factors are accounted for in the lodestar analysis, they will not be considered a second time in a way that would amount to "double-counting." *See E. Associated Coal Corp.*, 724 F.3d at 570. Turning to the defendants' argument that the fees requested do not match awards in similar cases, the court has considered *Nelson v. A & H Motors, Inc.*, No. JKS-12-2288, 2013 WL 388991 (D. Md. Jan. 20, 2013), and does not find a reduction appropriate. In *Nelson*, although there were only about four months between the lawsuit being filed and a settlement being reached, counsel represented only one client. *Id.* at *1. Moreover, the court cannot determine why fewer hours were claimed in *Nelson* than here. In sum, the court will reduce hours based on the time this case required, but will not reduce hours based on the customary fee for similar work or fee awards in similar cases.

Finally, the defendants argue that two more considerations warrant an additional reduction to fees. First, according to the defendants, plaintiffs' counsel's time records do not comply with the requirements of Appendix B of the Local Rules. In particular, the defendants object that the time records are organized chronologically rather than by litigation phase. Plaintiffs' counsel's time entries do appear chronologically, but they were careful to note the litigation phase next to every entry. Thus, although the organization of the time sheets is not ideal, the court determines plaintiffs' counsel adequately complied with Appendix B. Second, the defendants argue that plaintiffs' counsel should have exercised billing discretion by allowing

only one timekeeper to claim hours for meetings and phone calls conducted with other timekeepers. Having already identified hours that should have been excised using billing discretion, the court does not find another reduction necessary.

### C. Costs

The defendants ask the court to award only $100.00 in costs. They maintain that costs for service of process are recoverable, but costs associated with conducting a private investigation and legal research are not. The Fourth Circuit has held that district courts have discretion to determine the costs that will be assessed against losing defendants in FLSA cases. *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998). In *Spell v. McDaniel*, the Fourth Circuit explained that costs charged to losing defendants may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." 852 F.2d 762, 771 (4th Cir. 1988) (citation and internal quotation marks omitted). Costs charged to losing defendants may include "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez v. J.T.T. Enterprises Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010). *But see Daly v. Hill*, 790 F.2d 1071, 1087–88 (4th Cir. 1986) (upholding the district court's decision to disallow costs for legal research because it was not clear when those costs were incurred). By contrast, costs for a private investigator are questionable "[g]iven the broad discovery tools available in civil litigation." *See Alford v. Martin & Gass, Inc.*, No. LMB-08-595, 2009 WL 2447936, at *3 (E.D. Va. Aug. 3, 2009); *see also Landaeta*, 2011 WL 5118420, at *11.

Here, the court will award costs incurred from serving process on Hofman, interviewing clients, and conducting a January 16, 2013, telephone conference call, but will deny other costs

13

associated with conducting a private investigation, legal research, and document management. Plaintiffs' counsel used private investigators to conduct client interviews in an effort "to minimize litigation costs and attorney time," (Pls.' Mot. for Att'y Fees, ECF No. 22-1, at 12), and the defendants concede that reasonable time spent interviewing clients is recoverable. But plaintiffs' counsel do not provide an adequate explanation as to why any additional private investigation was necessary. Nor do they explain how "document management software" was used in this case or why it was necessary. As for the costs of conducting online research, it is not clear when those costs were incurred—in particular, whether they were incurred prior to counsel being formally retained in connection with case evaluation. Plaintiffs' counsel indicate only that those costs were incurred in "January 2013." (Pls.' Costs, ECF No. 22-8, at 1.) It is also not clear what research plaintiffs' counsel conducted. Fee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs. *See, e.g.*, *Spencer v. General Elec. Co.*, 706 F. Supp. 1234, 1244 (E.D. Va. 1989). Plaintiffs' counsel do not meet this burden with respect to the costs of the private investigation, legal research, and document management. Accordingly, the court will award $341.74 in costs.

## CONCLUSION

For the reasons stated above, the court will award attorneys' fees in the amount of $10,964.00 and costs in the amount of $341.74. A separate order detailing the fees for each attorney follows.

<u>February 25, 2014</u>                                                       <u>    /s/    </u>
Date                                                                                     Catherine C. Blake
                                                                                       United States District Judge